HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| A.B.T., K.M.-W., G.K., L.K.G., D.W., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br>v.<br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; Janet NAPOLITANO, Secretary, Department of Homeland Security; Alejandro MAYORKAS, Director, U.S. Citizenship and Immigration Services; Eric H. HOLDER, Jr., Attorney General of the United States; Juan OSUNA, Director, Executive Office for Immigration Review,<br><br>Defendants. | CASE NO. 2:11-cv-02108 RAJ<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER FOR REDACTION OF THEIR NAMES EXCEPT FOR FIRST INITIALS |

- 1

## I. INTRODUCTION

This matter comes before the court on plaintiffs' motion for a protective order. Dkt. # 12.[1] Plaintiffs seek an order permitting them and requiring defendants to use the initials of the plaintiffs' first and last names in all filings so plaintiffs' identities remain confidential. Defendants, the U.S. Citizenship and Immigration Services; the Executive Office for Immigration Review; Janet Napolitano, Secretary of the Department of Homeland Security; Alejandro Mayorkas, Director, U.S. Citizenship and Immigration Services; Eric H. Holder, Jr. Attorney General of the United States; and Juan Osuna, Director of the Executive Office for Immigration Review (collectively, "Defendants") oppose the motion on the basis that (1) plaintiffs fail to meet *Advanced Textile* standards to proceed anonymously, (2) the Constitution and Federal Rules counsel against anonymous filing, (3) anonymous filing runs counter to common law, and (4) federal regulations favor denying the motion to file anonymously. Dkt. # 22 (Answer) at 2-5. Having reviewed the memoranda, exhibits, and the record herein, the court GRANTS the motion.

## II. BACKGROUND

Plaintiffs are all noncitizens who have filed applications for asylum with Defendants. Dkt. # 12 (Mot.) at 2. On December 15, 2011, plaintiffs filed a putative class action complaint challenging the constitutionality of the Defendants' practices involving their efforts to obtain Employment Authorization Documents while they seek asylum in removal proceedings. Dkt. # 1 (Compl.) ¶¶ 2-7. Plaintiffs also allege that Defendants' policies and practices violate the Immigration and Nationality Act and the Administrative Procedure Act. *Id.* ¶ 4. On December 23, 2011, Plaintiffs moved for a Protective Order for Redaction of Plaintiffs' Names Except for First Initials. Dkt. # 12

---

[1] The court also addresses the parties' recently filed stipulation to stay the proceedings in the conclusion. Dkt. # 38.

(Mot.). Plaintiffs allege that they have been persecuted or that they fear persecution in their home countries. Dkt. # 1 (Compl.) ¶ 1. Some of the plaintiffs previously initiated judicial proceedings using their full names and alien numbers and are identified in public PACER/ECF pages. Dkt. # 22 (Answer) at 3. Plaintiffs represent that Defendants have received a copy of the complaint with plaintiffs' full names and alien numbers. Dkt. # 27 (Reply) at 3.

Plaintiffs A.B.T., K.M.-W., L.K.G. are citizens of Eritrea. Dkt. # 1 (Compl.) ¶¶ 12, 13, 15. A.B.T first arrived in the United States on September 14, 2010. *Id.* ¶ 52. Upon her arrival, a Department of Homeland Security ("DHS") agent determined A.B.T. had a credible fear of persecution if she returned to Eritrea. *Id.* A.B.T. alleges that she fled from Eritrea to escape past persecution and threats of future persecution due to her political opinion and membership in a social group of Eritrean women who have been subjected to gender-based violence. *Id.* A.B.T. claims that she escaped from the Eritrean National Service and fears that they will arrest and possibly kill her if she returns to Eritrea. Dkt. # 27, Ex. 1 (A.B.T Decl.) at 2. A.B.T. also claims that the Eritrean government has questioned her family in Eritrea to determine A.B.T.'s whereabouts and that her family hid her asylum status by stating that A.B.T. was in the Eritrean National Service. *Id.*

K.M.-W. arrived in the United States on December 17, 2009. Dkt. # 1 (Compl.) ¶ 59. K.M.-W. alleges that he fled from Eritrea to escape past persecution and threats of future persecution due to his political opinion. *Id.* Upon his arrival, a DHS officer determined K.M.-W. had a credible fear of persecution if he returned to Eritrea. *Id.*

L.K.G. arrived in the United States on January 11, 2007. *Id.* ¶ 79. She alleges that she fled from Eritrea to escape past persecution and threats of future persecution due to her political opinion. *Id.* On January 23, 2007, the U.S. Citizenship and Immigration Services determined she credibly feared persecution if she returns to Eritrea. *Id.* L.K.G. claims she escaped from the Eritrean military, and they continue to contact her family in

Eritrea to inquire about her whereabouts. Dkt. # 27, Ex. 2 (L.K.G. Decl.) at 2. To conceal her whereabouts from the Eritrean government, L.K.G. claims that she avoids large public gatherings and being photographed in public. *Id.*

Plaintiff D.W. is a citizen of China. Dkt. # 1 (Compl.) ¶ 16. D.W. first arrived in the United States on September 21, 2002. *Id.* He claims that he fled from China to escape past persecution and threats of future persecution due to his religion. *Id.* ¶ 88. D.W. claims that when he was in China, police officers arrested and beat him for hosting Bible studies. Dkt # 27, Ex. 4 (D.W. Decl.) at 000329. D.W. claims his wife and daughter are still in China and he fears for their safety. *Id.* D.W. believes police officers continue to interrogate his wife in an effort to find him. *Id.*

Plaintiff G.K. is a citizen of India. Dkt. # 1 (Compl.) ¶ 14. G.K. arrived in the United States on April 17, 2001. *Id.* G.K. claims that she fled from India to escape past persecution and threats of future persecution due to her religion and political opinion. *Id.* ¶ 70. G.K. fears for the safety of her family who reside in India. Dkt. # 27, Ex. 3 (G.K. Decl.) at 2.

### III.   ANALYSIS

In judicial proceedings, the common law right of access to courts and judicial records is well-established. *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (2010). Generally, parties are to be identified by their real names in all court filings. *See* Fed. R. Civ. P. 10(a). Nevertheless, the Ninth Circuit has held that "in special circumstances," the district court may preserve a party's anonymity if the party's need for anonymity outweighs the prejudice to the opposing party and the public's interest in knowing the party's identity. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000). To determine whether a party may proceed anonymously when the opposing party has objected, five factors must be balanced: (1) the severity of the retaliatory harm, (2) the reasonableness of the anonymous party's fears

ORDER GRANTING PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER FOR REDACTION OF THEIR NAMES EXCEPT FOR FIRST INITIALS- 4

(3) the anonymous party's vulnerability to the retaliation, (4) the prejudice to the opposing party, and (5) the public interest. *Kamehameha Schools*, 596 F.3d at 1042.

### A.     Severity of Retaliatory Harm

To be sufficiently severe, the threat of retaliatory harm must be extraordinary and greater than what the typical plaintiff would face. *Advanced Textile Corp.*, 214 F.3d at 1070. Retaliation may include harm by third parties, reprisals against nonparties and economic harm. *Id*.

Here, plaintiffs' respective declarations describe the possible retaliatory harms. A.B.T. claims that if she is identified in this suit, it will be easier for the Eritrean government to learn that she is a National Service deserter, and that they may arrest and kill her if she is forced to return to Eritrea. Dkt. # 27, Ex. 1 (A.B.T. Decl.) at 2. She claims that identification may also lead the Eritrean government to increase scrutiny of her family in Eritrea which may lead to their arrest and imprisonment. *Id.* at 2. Similarly, L.K.G. claims that his identification would put him "in great danger" because the Eritrean military will know he is a military deserter and an asylum seeker. Dkt. # 27, Ex. 2 (L.K.G. Decl.) at 2. His identification may also cause the Eritrean government to arrest and imprison his family and demand money for their release. *Id.* If L.K.G.'s family were arrested, L.K.G. claims that they may be held indefinitely because he does not have the money to pay for their release. *Id.* D.W. claims that he will "be finished" if he is identified and forced to return to China. D.W. also believes his identification will jeopardize the safety of his wife and child. Dkt. # 27, Ex. 4 (D.W. Decl.) at 000329. G.K. claims that if she is identified and forced to return to India, she will be in danger of future persecution. Dkt. # 27, Ex. 3 (G.K. Decl.) at 3. She claims that identification would also jeopardize the safety of her parents and siblings in India. *Id.*

Plaintiffs have shown that the severity of threatened harm is great. If the plaintiffs are identified and forced to return to their home countries, the plaintiffs may be

persecuted, imprisoned under hostile conditions, tortured, or killed. *See* Dkt. # 27, Exs. 1 at 2, 2 at 2, 3 at 3, 4 at 000327, 000329; *see also* Dkt. # 27, Exs. 9-14. Their identification in this suit may also jeopardize the freedom and physical safety of the plaintiffs' families, and may cause their families substantial economic harm. Dkt. # 27, Exs. 1 at 2, 2 at 2, 3 at 3, 4 at 000327, 000329.

**B.    Plaintiffs' Reasonable Fear**

A party's fear of retaliatory harm must be objectively reasonable: plaintiffs must demonstrate that they were threatened and a reasonable person would believe that the threat might be carried out. *Advanced Textile Corp.*, 214 F.3d at 1071. Each party does not have to demonstrate an "individualized risk of retaliation." *Id.* at 1069 n.11. Rather, evidence that similarly-situated individuals possess a reasonable fear of severe retaliation is sufficient to warrant their anonymity.[2] *Id.*

Official reports of Eritrea government and military retaliation against nonparties similarly-situated to plaintiffs support the reasonableness of A.B.T.'s, K.M.-W.'s and L.K.G.'s fears. Dkt. # 27, Exs. 9-12. The 2010 State Department Human Rights Report states that repatriated Eritrean refugee and asylum seekers, such as those similar to A.B.T., K.M.-W., and L.K.G., have disappeared without information. Dkt. # 27, Ex. 9 at 4. Furthermore, the Eritrean government has sanctioned torture methods against military deserters, draft evaders, and persons attempting to flee the country. *Id.* at 5. The United Nations High Commissioner for Refugees report that family members and relatives of draft evaders and deserters are at risk of persecution due to the Eritrea government's practices of substituting family members to fulfill the outstanding military service requirements and imposing punitive fines and imprisonment. Dkt. # 27, Ex. 10 at 19-20. Additionally, the DHS's specific determinations that A.B.T., K.M.-W. and L.K.G. have a

---

[2]  Although K.M.-W. did not provide a declaration of his individualized fears of retaliation, as an asylum seeker from Eritrea, he is similarly situated to A.B.T. and L.K.G. so the reasonableness of their fears may be evaluated together. *See Advanced Textile Corp.*, 214 F.3d at 1069 n.11.

credible fear of persecution provide additional evidence of these plaintiffs' reasonable fear of retaliation. Dkt. # 1 (Compl.) ¶¶ 52, 59, 79.

Reports of Chinese and Indian persecution support the objective reasonableness of D.W.'s and G.K.'s fears. The 2011 Amnesty International Report on China found that followers of unregistered or banned religious groups similar to D.W. risked harassment, persecution, detention, and imprisonment. Dkt. # 27, Ex. 13 at 105. Such practices lead to ill-treatment including reports of death in custody, sometimes caused by torture. Dkt. # 27, Ex. 13 at 106. The State Department Human Rights and Labor Country Report on India reported instances of the local government holding political prisoners. State Dep't Bureau of Democracy, *India,* <u>Human Rights And Labor Country Reports On Human Rights Practices For 2011</u>, http://www.state.gov/documents/organization/186675.pdf (last visited July 20, 2012). Accordingly, plaintiffs have provided evidence to support the objective reasonableness of their fears.

**C.     Plaintiffs' Vulnerability**

Vulnerability is established by the party's dependence on anonymity to avoid retaliatory harm. *See Advanced Textile Corp.*, 214 F.3d at 1071-72 (determining that plaintiffs were vulnerable where court had no ability to protect plaintiffs from reprisals or to protect plaintiffs' family members who resided in their home country, and where plaintiffs were more effectively protected from retaliation by concealing their identities than by relying on the deterrent effect of post hoc remedies). A party's status as a vulnerable class member does not automatically establish a vulnerability to retaliation requiring anonymity. *See Kamehameha Schools*, 596 F.3d at 1045 (determining that plaintiffs did not meet need for anonymity despite being members of a vulnerable class as minors). Correspondingly, the existence of other public records that identify the anonymous party do not automatically defeat a claim of vulnerability either. *Advanced Textile Corp.,* 214 F.3d at 1069 ("[T]he fact that some employees chose to file …

complaints under their true names does not refute plaintiffs' evidence that they hold a reasonable fear of retaliation.").

Here, plaintiffs are dependent on anonymity to protect themselves and their families from retaliatory harm if they return to their home countries. Plaintiffs are not vulnerable merely because they are asylum-seekers; plaintiffs are vulnerable because they are citizens of countries that have sanctioned severe retaliatory practices. *See* Dkt. # 27, Exs. 9-12. Plaintiffs will likely lack access to adequate legal, political or physical protection to defend against or to prevent retaliatory harm if they are forced to return to their respective home countries. *See* Dkt. # 27, Ex. 1- 4, 9 at 9-10, 10 at 19-20, 12 at 1; Dkt. # 28 (Ex. 11) at 43-44. Furthermore, plaintiffs' vulnerability to retaliation exists regardless of the existence of other public records in public PACER/ECF pages which identify some of the plaintiffs. *See* Dkt. # 22 (Answer) at 3; *Advanced Textile Corp.*, 214 F.3d at 1069. Accordingly, the court finds that plaintiffs are highly vulnerable to retaliation.

**D.    Prejudice to the Defendants**

Anonymity must have limited prejudicial effects on the opposing party's ability to litigate the case and mount a defense. *See Advanced Textile Corp.*, 214 F.3d at 1072. If anonymity is granted, the precise prejudice to the opposing party must be determined at each stage of the proceeding, and proceedings must be structured to mitigate as much prejudice as possible to ensure fairness. *Id*. At this stage of the proceeding, prejudice to the Defendants is mitigated because plaintiffs represent that Defendants have received a copy of the complaint with plaintiffs' full names and alien numbers. Dkt. # 27 (Reply) at 3. Accordingly, the court finds that anonymity will only marginally affect the defendant's ability to litigate the case and mount a defense. *See* Dkt. # 22, (Answer) at 4.

**E.    Public Interest**

The public interest in anonymity must be weighed against the public interest in open proceedings. *See Advanced Textile Corp.*, 214 F.3d at 1072. Because of the public

interest in open judicial proceedings, federal regulations emphasize that anonymity should be granted rarely. *See, e.g.,* 28 C.F.R. § 50.9 (2012) ("There is … a strong presumption against closing proceedings … and the Department of Justice foresees very few cases in which closure would be warranted."). Nevertheless, there exists a strong public interest in restricting asylum seekers' identities from the public. *See* 8 C.F.R. §§ 208.6, 1208.6 (2012);[3] *see also* Fed. R. Civ. P. 5.2(c).[4] Asylum seekers have the right to keep confidential any information contained in or pertaining to an asylum application that allows a third party to link the identity of the applicant to: (1) the fact that the applicant has applied for asylum; (2) specific facts or allegations pertaining to the individual asylum claim contained in an asylum application; or (3) facts or allegations that are sufficient to give rise to a reasonable inference that the applicant has applied for asylum. 8 C.F.R. §§ 208.6, 1208.6 (2012). There are only specific, enumerated exceptions where asylum-related information may be disclosed without plaintiffs' written consent. *See id.* Exceptions include, *inter alia*, disclosure to any Federal, State or local court in the United States considering any legal action. *Id.*

Here, anonymity should be granted despite the strong presumption against closing proceedings. Due to the nature of this case, plaintiffs' identities cannot be separated from the facts and allegations about their asylum applications. *See* Dkt. # 1 ¶¶ 2-7, 12-16, 52, 70, 79, 88. Defendants argue that the court should reject plaintiffs' motion because this

---

[3] The Homeland Security Act of 2002 transferred the functions of the Immigration and Naturalization Service ("INS") to the DHS and retained the functions of the Executive Office for Immigration Review ("EOIR") in the Department of Justice. These changes required the reorganization of title 8 of the Code of Federal Regulations to place the INS regulations and the EOIR regulations into separate chapters. Therefore, 8 C.F.R. § 208.6, is duplicated at 8 C.F.R. § 1208.6. *Lin v. U.S. Dep't of Justice* 459 F.3d 255, 258 n.1 (2006).

[4] Fed. R. Civ. P. 5.2 restricts access to electronic files in immigration cases. Nonetheless, any member of the public has access to the full record of such cases at the courthouse. Fed. R. Civ. P. 5.2(c)(2). Additionally, all orders of the court are available to the public. Fed. R. Civ. P. 5.2(c)(2)(B). Accordingly, a protective order is necessary to preclude disclosure to the general public.

case falls within the 8 C.F.R. §§ 208.6, 1208.6 exception where plaintiffs' identities may be disclosed to the court and Defendants without written permission. Defendants are mistaken. The exception permits disclosure of identities to the courts, but it does not permit disclosure to the general public. *See* 8 C.F.R. §§ 208.6, 1208.6. If the court denied plaintiffs' motion, the court would, in essence, be ordering plaintiffs and Defendants to disclose plaintiffs' identities to the public.[5] *See id.* Given the clear mandate to protect asylum applicants and to prevent disclosure of their identities to the general public, the court has grave concerns of the role it would play in essentially requiring the parties to violate 8 C.F.R. §§ 208.6, 1208.6.

Furthermore, lawsuits that enforce statutes and constitutional rights generally benefit the public. *See Advanced Textile Corp.*, 214 F.3d at 1073. The courts have an interest for such cases to be decided on the merits. *See e.g. Plyer v. Doe*, 457 U.S. 202 (1982) (undocumented immigrants proceeded anonymously in their successful constitutional challenge to a Texas law denying free public grammar school education to undocumented immigrant children); *Roe v. Wade*, 410 U.S. 959 (1973) (pregnant woman proceeded anonymously in her successful constitutional challenge to a Texas statute criminalizing certain abortions).[6] Action that may chill a party's willingness to litigate constitutional issues and violations of statutes is generally considered against public policy. *See Advanced Textile Corp.*, 214 F.3d at 1073.

This case alleges statutory and constitutional violations. Dkt. # 1 ¶¶ 2-7. The court believes that this case should be decided on the merits. *Advanced Textile Corp.*, 214 F.3d at 1073. Considering the severity of the retaliatory harm in this case, forcing

---

[5] If asylum-related information is properly disclosed to a third party pursuant to 8 C.F.R. § 208.6, the third-party recipient is bound by the confidentiality regulations under 8 C.F.R. § 208.6. Dkt. # 27, Ex. 8 (Fact Sheet: Federal Regulations Protecting the Confidentiality of Asylum Applicants) at 5.

[6] Plaintiffs in *Plyler* and *Roe* proceeded anonymously, but the issue of anonymity was not contested or litigated.

plaintiffs to disclose their identity would likely chill their willingness to challenge statutory and constitutional violations. *Id.* Accordingly, allowing plaintiffs to use their initials will serve the public's interest in this lawsuit by enabling it to go forward.

## IV.   CONCLUSION

For all the foregoing reasons, the court GRANTS plaintiff's motion for a protective order.  Dkt. # 12.  The court also GRANTS the parties' stipulated motion to stay proceedings.  Dkt. # 38.  The clerk is ORDERED to terminate the pending motions. Dkt. # 13, 31.  The parties are ORDERED to file a status report no later than October 25, 2012 regarding the status of the case.  If the case has not resolved, the parties shall request that the court re-calendar the pending motions for the first Friday thereafter.

Dated this 20th day of July, 2012.

*Richard A. Jones*
_____
The Honorable Richard A. Jones
United States District Judge